IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JOHN S. HOFMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-3125 |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

Plaintiff John S. Hofman appeals the denial of his application for disability insurance benefits and supplemental security income under the Social Security Act. This Court has jurisdiction. 42 U.S.C. § 405(g). The parties have filed cross-motions for summary judgment. <u>Motion for Summary Judgment (d/e 9)</u>; <u>Defendant Commissioner's Motion for Summary Affirmance (d/e 12)</u>. For the reasons set forth below, the Commissioner's Motion for Summary Affirmance is ALLOWED and Hofman's Motion for Summary Judgment is DENIED. The Decision of the Commissioner is affirmed.

1

STATEMENT OF FACTS

Hofman was born on September 18, 1960. He completed high school and one semester of college. He has worked as a security guard, telemarketer, and counter clerk. Answer (d/e 8), attached Certified Record of Proceedings Before the Social Security Administration (R.), at 127. He last worked as a janitor. That employment ended the fall of 2003. R. 27. He claimed that he has been disabled due to back problems since December 31, 2002.

In March 2003, MRI studies of Hofman's back were performed at the Capitol Community Health Center in Springfield, Illinois. The MRI studies showed two large disc herniations and three other disc bulges in his lumbar spine. R. 210. The notes from the Capitol Community Health Center also showed positive muscle spasms and limited range of motion. R. 221.

On August 31, 2005, Vittal Chapa, M.D., conducted a consultative examination of Hofman. Dr. Chapa stated that Hofman was able to bear weight and to ambulate without any ambulatory needs, and his gait was steady. Dr. Chapa noted a mild amount of paravertaebral muscle spasms. He also noted some decreased pinprick sensation in his left leg. Dr. Chapa did not review any medical records when he conducted his examination. R.

233-36.

On September 9, 2005, a state agency physician Charles Kenney, M.D., reviewed Hofman's medical records and performed a physical residual functional capacity assessment. Dr. Kenney opined that Hofman could: (1) lift 20 pounds occasionally and 10 pounds frequently; (2) sit, stand and/or walk 6 hours in an 8 hour day; (3) push and/or pull without limitation; and (4) occasionally use ladders, ropes, and scaffolds. R. 239-46.

In October 2005, Hofman went to Capitol Community Health Center complaining of lower back and hip pain. He was seen by Dinraj Hegde, M.D. Hip x-rays were normal. Another MRI showed degenerative disc disease with stenosis, disc bulges, and disc protrusions. R. 258-62, 265.[1] Dr. Hegde referred him to a neurosurgeon, but the referral was denied. Hofman did not want to see an orthopedist or a physical therapist. R. 291.

Hofman saw Dr. Hegde again in January 2006. Dr. Hegde indicated in his notes that Hofman had difficulty walking at that time. R. 290. In February 2006, Hofman agreed to see orthopedist Per Freitag, M.D. Dr. Freitag found diffuse tenderness in his back. His gait was near normal. Dr.

---

[1]Stenosis is the narrowing of the spinal canal formed by the vertebrae and the intervertebral disks. American Medical Association, Complete Medical Encyclopedia (1st ed. 2003), at 1150.

3

Freitag reviewed the October 2005 MRI and stated that Hofman had cervical degenerative disc disease, but was "without significant canal compromise or foraminal stenosis." R. 272-73. Dr. Freitag ordered another MRI and recommended epidural lumbar spine steroid shots. In April 2006, Dr. Freitag reviewed the new MRI and found stenosis in the cervical spine. Dr. Freitag again recommended epidural lumbar spine steroid shots. R. 274.

In September 2006, Hofman saw Dr. Hegde again. Hofman had fallen on some stairs. R. 279. On September 19, 2006, Dr. Hegde wrote a note that said:

> Mr. John Hoffman (sic) is a patient in this clinic and has been for several months. Mr. Hoffman has had back pain for years and it has worsened over the past several month. Mr. Hoffman has had two MRI's in 2003 and the other in 2005. The latter shows no improvement in disc bulge. The MRI also shows severe multi level degenerative disc disease and spondylosis, causing severe central stenosis. Mr. Hoffman has difficulty walking and uses a cane. He is unable to work currently until further reevaluation in 4 months.

R. 275.

Dr. Hegde ordered x-rays in May 2007, but the x-rays showed no significant abnormalities. R. 311. In July 2007, Hofman saw Dr. Hegde again. Dr. Hegde diagnosed Hofman with depression and prescribed Paxil. Dr. Hegde also indicated that Hofman had received two epidural spine

4

steroid shots for pain. R. 304.

The Administrative Law Judge (ALJ) conducted a hearing on September 12, 2007. Hofman testified and a vocational expert Dr. James Lanier testified at the hearing. Hofman testified that he was single and lived alone in a first-floor apartment. He testified that he took Paxil for his nerves, and ibuprofen and Tylenol for his back pain. R. 29. Hofman said that his doctor recommended stronger, narcotic-type pain medication, but Hofman said that he did not have the insurance to pay for them. He also had a drug problem in the past, and so, did not want to take narcotics. R. 44. Hofman said that the epidural shots had no effect. R. 30, 50-51.

Hofman testified that he got up between 5:00 a.m. and 6:00 a.m., and went to sleep between 10:00 p.m. and 12:00 a.m. He spent his time reading, watching television, listening to talk radio, and reading blogs on the Internet. He cooked one meal on days when he could stand long enough. R. 33. He typically ate TV dinners or sandwiches. R. 38. He smoked a pack of cigarettes a day. R. 38. He did not go grocery shopping or do any laundry. His sister or his friend did those tasks for him. His sister cleaned his apartment. R. 34. Hofman bathed himself, dressed himself, and took care of his personal hygiene. R. 33-34. He did not leave the apartment

much. He could not drive because his license was suspended. R. 40.

Hofman said he had constant pain in his back and hips. R. 39-40. He used a cane to walk. He bought the cane himself; no doctor prescribed it. R. 38. He said that he could stand for 15 to 30 minutes at a time, could sit for 30 minutes to an hour, and could walk half a block. R. 48-49. He could alternate between sitting and standing for two hours, but then must lie down. R. 49.

Dr. Lanier then testified. The ALJ asked Dr. Lanier the following hypothetical question:

> Please assume a hypothetical younger individual with more than a high school education, same past relevant work as the claimant, has a residual functional capacity to perform at the light exertional level which does not require climbing of ladders, ropes or scaffolds or more than occasional climbing of ramps or stairs or more than occasional balancing, stooping, kneeling, crouching or crawling. Can such a hypothetical individual perform past relevant work?

R. 54. Dr. Lanier opined that such a person could perform Hofman's past relevant work. R. 54. The ALJ then asked Dr. Lanier to assume that the person was limited to "lifting no more than 10 pounds occasionally, less than 10 pounds frequently, standing or walking up to two hours out of an eight-hour day with normal breaks or sitting up to six hours out of an eight-

hour day with normal breaks, . . . ." R. 54. Dr. Lanier opined that such a person could perform Hofman's past work as a telephone solicitor. R. 55.

On December 21, 2008, the ALJ issued his Decision. R. 10-18. The ALJ followed the five-step analysis set forth in the Social Security Administration regulations (Analysis). 20 C.F.R. §§ 404.1520, 416.920. Step 1 requires that the claimant not be currently engaged in gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If true, Step 2 requires the claimant to have a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). If true, Step 3 requires a determination of whether the claimant is so severely impaired that he is disabled regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Such severe impairments are set forth in an appendix to the regulations referred to as the Listings. 20 C.F.R. Part 404 Subpart P, Appendix 1. The claimant's condition must meet the criteria in a Listing or be equal to the criteria in a Listing. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not so severely impaired, then Step 4 requires the ALJ to determine whether the claimant is able to return to his prior work considering his Residual Functional Capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot return to his prior work,

7

then Step 5 requires a determination of whether the claimant is disabled considering his RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant has the burden of presenting evidence and proving the issues on the first four steps. The Commissioner has the burden on the last step; the Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy. Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).

The ALJ determined that Hofman met his burden at Steps 1 and 2. Hofman had not engaged in substantial gainful activity since December 31, 2002, and he had severe impairments due to degenerative disc disease in his back. R. 12.

The ALJ determined at Step 3 that Hofman did not meet any Listing. The ALJ considered Listing 1.04, disorders of the spine. This Listing included spinal disorders in which the individual suffered from lumbar spinal stenosis resulting in the inability to ambulate effectively. Listing 1.04(C). The regulations defined the inability to ambulate effectively as "having insufficient lower extremity functioning to permit independent ambulation without the use of an hand-held assistive devise(s) that limits

8

the functioning of both upper extremities." 20 C.F.R. Part 404, Subpart P, Appendix 1.00(B)(2)(a) (internal cross reference omitted). The regulations gave as an example of ineffective ambulation a person who must use a walker or two crutches to walk. 20 C.F.R. Part 404, Subpart P, Appendix 1.00B2(b).

The ALJ said that "the record is devoid of evidence of . . . lumbar spinal stenosis with accompanying ineffective ambulation." R. 13. The ALJ noted that Hofman used a cane, but the ALJ relied on Dr. Chapa's observations that Hofman had a steady gait. R. 13. The ALJ also relied on his own observations of Hofman at the hearing, "In addition, the undersigned noted at the hearing that, while the claimant walked with a cane, he had a steady, unhesitant gait." R. 13. The ALJ saw Hofman on a video screen because the hearing was conducted by video conference. R. 24.

The ALJ then determined that Hofman had the RFC to perform "light work that does not require climbing ladders, ropes or scaffolds; nor more than occasional climbing of ramps and stairs; nor more than occasional balancing, stooping, kneeling, crouching or crawling." R. 13. In reaching this conclusion, the ALJ accepted that Hofman had a serious back condition that produced pain, but that Hofman's testimony regarding the level of pain

9

was not fully credible. The ALJ noted that Hofman presented no medical evidence of a severe impairment at the claimed onset date of December 31, 2002; the first medical evidence of any complaint was Hofman's March 2003, MRI studies. The ALJ then relied on Dr. Chapa's examination. The evidence that Hofman did not take any prescription pain medication and that he refused physical therapy also indicated to the ALJ that the pain was not as severe as Hofman claimed.

The ALJ put little weight on the September 19, 2006, letter from Dr. Hegde. The ALJ stated that Dr. Hegde was not familiar with the legal requirements of disability, and the question of disability is for the Commissioner. Second, Dr. Hegde was opining regarding Hofman's condition after a fall, and so, the opinion only concerned a temporary condition. Last, the ALJ said that Dr. Hegde's opinions were only conclusory without explanation of the evidence on which Dr. Hegde relied. R. 16.

The ALJ then determined at Step 4 that Hofman could perform his past relevant work. The ALJ relied on the RFC and the opinion testimony of Dr. Lanier. The ALJ concluded that Hofman was not disabled. R. 17.

Hofman appealed to the Appeals Council. The Appeals Council

denied Hofman's request to review the case on April 15, 2008. Hofman then filed this case to appeal the Decision of the Commissioner.

## ANALYSIS

This Court reviews the ALJ's Decision to determine whether it is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). The ALJ further must articulate at least minimally his analysis of all relevant evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). The Court must be able to "track" the analysis to determine whether the ALJ considered all the important evidence. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995).

In this case, the ALJ's Decision is supported by substantial evidence. The ALJ found that Hofman did not meet the Listing for disorders of the spine. This is supported by the evidence. The evidence shows that Hofman had degenerative disc disease resulting in stenosis, but the stenosis was not severe enough to result in ineffective ambulation. As quoted above, the

regulations state that ineffective ambulation means that the person must use assistive devices that limit the functioning of both upper extremities. 20 C.F.R. Part 404, Subpart P, Appendix 1.00(B)(2)(a). Hofman uses one cane. Thus, his assistive device did not limit the functioning of both upper extremities. The ALJ's conclusion at Step 3 is supported by the evidence.

The ALJ's conclusion at Step 4 that Hofman could perform his prior work is also supported by the evidence. The examination by Dr. Chapa and the functional capacity analysis by Dr. Kenney support the ALJ's RFC finding. The finding that Hofman could perform his past work is also supported by the testimony of Dr. Lanier. The ALJ determined that Hofman's testimony to the contrary regarding the severity of his condition was not credible. The Court will not disturb this credibility determination.

Hofman argues that the ALJ erred in stating that the record was devoid of evidence of stenosis. Hofman's reading of the ALJ's Decision is incorrect. The ALJ stated that the record was "devoid of evidence of . . . stenosis with accompanying ineffective ambulation." R. 13. The ALJ's statement is correct because Hofman's stenosis was not accompanied by ineffective ambulation. Hofman only uses one cane to walk. He can ambulate effectively, as that term is defined in the regulations.

Hofman also argues that the ALJ improperly rejected Dr. Hegde's opinion. However, the regulations require the Commissioner to give controlling weight to the opinions of treating physicians if those opinions are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527. The Commissioner, however, is not to give controlling weight to a treating physician's opinion on issues reserved to the Commissioner. See Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, SSR 96-5p, 1996 WL 374183 (July 2, 1996). Dr. Hegde's medical opinions were that Hofman had bulging discs and "severe multi level degenerative disc disease and spondylosis, causing severe central stenosis. Mr. Hoffman has difficulty walking and uses a cane." R. 275. The ALJ's Decision is consistent with these opinions.

Dr. Hegde's statement that Hofman cannot work, however, was not a medical opinion, but an opinion on the ultimate issue which is reserved to the Commissioner. SSR 96-5p, 1996 WL 374183 at *5. Also, Dr. Hegde opined that Hofman could not work currently and would be reevaluated in four months. R. 275. The ALJ interpreted this statement as an opinion

that Hofman had a temporary limitation on his ability to work. Hofman had recently fallen down some stairs, and so, could be suffering from a temporary aggravation of his condition. The ALJ's treatment of Dr. Hegde's opinion was, thus, supported by the record.

THEREFORE, the Commissioner's Motion for Summary Affirmance (d/e 12) is ALLOWED and Hofman's Motion for Summary Judgment (d/e 9) is DENIED. Judgment is entered in favor of the Defendant Commissioner of Social Security and against Plaintiff John S. Hofman. The Court affirms the Decision of the Commissioner. All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER: June 24, 2009

    FOR THE COURT:

                                    s/ Jeanne E. Scott
                                    JEANNE E. SCOTT
                      UNITED STATES DISTRICT JUDGE